IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Civil Action No. 8:11-cv-00087-AW |
| GISELLE C. THELEMAQUE, | |
| Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Liberty Mutual Insurance Company brings this action against Defendant Giselle C. Thelemaque. Plaintiff asserts a breach of contract claim. Presently pending before the Court is Plaintiff's Motion for Summary Judgment. The Court has reviewed the entire record and finds no hearing necessary. For the reasons that follow, the Court **GRANTS** Plaintiff's Motion for Summary Judgment.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On or about June 11, 2007, Defendant Giselle C. Thelemaque ("Thelemaque") petitioned for and was appointed conservator and guardian for the Estate of Winifred M. Perry[1] ("Estate") in an uncontested proceeding in the Superior Court of the District of Columbia, Probate Division ("Superior Court"). McKenna Decl. ¶ 3, Doc. No. 8-1. On July 18, 2007, as a condition of her appointment as conservator, Thelemaque obtained a conservator bond from Defendant Liberty Mutual Insurance Company ("Liberty Mutual" or "Liberty") in the amount of $539,000.00

---

[1] Winifred M. Perry is Thelemaque's aunt.

1

("Conservator Bond" or "Bond"). Doc. No. 8-3. The Conservator Bond explicitly names Thelemaque as principal and Liberty Mutual as surety. *Id.* at 2.

On the same day, Thelemaque executed a Probate and Fiduciary Surety Application and Indemnity Agreement in favor of Liberty Mutual ("Indemnity Agreement" or "Agreement"). Doc. No. 8-4. Thelemaque makes the following apposite promises under this Agreement:

> (3) to exonerate and indemnify the Surety from and against all claims, losses, liability, damages of any type (including punitive), costs, fees, expenses, suits, orders, judgments, or adjudications whatsoever, which Surety may incur in any manner related to the extension of surety credit, including the enforcement of the agreements contained herein and any matter subject to any bankruptcy court (collectively, "LOSS");
>
> (4) that Surety shall have the right, at its sole discretion, to pay, adjust, settle or compromise any LOSS and the voucher or other evidence of such payment, settlement or compromise, whether Surety was liable therefore or not, shall be prima facie evidence of the fact and extent of indemnitor's liability . . . .

*Id.* at 2.

On or around December 15, 2008, Thelemaque filed her first account and conservator's report and, following an audit and certain letter inquiries, submitted successive responses and supplements. McKenna Decl. ¶ 6, Doc. No. 8-1. On May 14, 2009 or thereabouts, the Honorable Ronald P. Wertheim of the Superior Court entered an Order requiring Thelemaque to show cause why her first account should be approved in light of alleged deficiencies in her existing account, including unexplained cash withdrawals from the Estate. *Id.* ¶ 7. The Superior Court also ordered the appointment of Ira E. Zimmerman as guardian ad litem to represent the interests of the Estate. *Id.*; *see* Doc. No. 8-6 at 2. On or about June 24, 2009, Zimmerman filed a report with the Superior Court seeking, among other things, the intervention of an Auditor-Master to undertake an accounting of Thelemaque's expenses as conservator and guardian of the Estate. McKenna Decl. ¶ 8, Doc. No. 8-1.

On or around July 9, 2009, in response to Zimmerman's June 24 request for intervention, the Honorable Louis L. Jenkins, Auditor-Master, convened a hearing to investigate Thelemaque's expenditures as conservator and guardian of her aunt's Estate. McKenna Decl. ¶ 11, Doc. No. 8-1. The Auditor-Master issued an interim Status Report on July 10, 2009, which included a preliminary finding that "a judgment of $176,769.93 should be entered jointly and severally against the conservator and her surety for unapproved expenditures." Doc. No. 8-6 at 1. The Auditor-Master noted that the amount Thelemaque owed could change upon presentation of further documents. *Id.*

In an Order dated July 15, 2009, Judge Wertheim accepted Thelemaque's resignation as the conservator of her aunt's Estate. Doc. No. 8-7. The Superior Court's July 15 Order states that "Thelemaque has mismanaged this estate and made unauthorized disbursements." *Id.* at 1. The Superior Court also called for a full accounting of the Estate by the Auditor-Master. *See id.*

Pursuant to the Superior Court's July 15 Order, the Auditor-Master convened a full accounting hearing and examination of Thelemaque on September 16, 2009. McKenna Decl. ¶ 16, Doc. No. 8-1. On October 30, 2009, the Auditor-Master issued its final Report, which included a recommendation that "the total judgment that should be entered against Ms. Thelemaque and her surety, as of October 30, 2009, is $192,433.87, with a total daily pre-judgment interest accruing at a rate of $29.03 per day." Doc. No. 8-9 at 1. On December 18, 2009, the Superior Court entered an Order adopting the October 30, 2009 Report of the Auditor-Master and entering judgment against Thelemaque and Liberty Mutual, jointly and severally, in the amount of $192,433.87, plus pre-judgment interest of $29.03 per day since October 30, 2009, in addition to post-judgment interest. Doc. No. 8-10.

Liberty Mutual has satisfied the Superior Court's judgment to the Estate in the total amount of $197,922.08. Doc. No. 8-11. Additionally, Liberty Mutual has incurred at least $33,383.00 in legal fees and expenses in connection with the Bond. McKenna Decl. ¶ 21, Doc. No 8-1; Doc. No. 8-12. Without success, Liberty Mutual has repeatedly requested Thelemaque to indemnify it for the amounts it expended in connection with the Bond. McKenna Decl. ¶¶ 22–23, Doc. No. 8-1.

On January 11, 2011, Liberty Mutual filed a Complaint. Compl., Doc. No. 1. The Complaint contains five counts, all of which revolve around Thelemaque's alleged breach of the Indemnity Agreement. Thelemaque answered and the case technically went into discovery, though the Parties did not actually conduct discovery. *See* Doc. Nos. 6–7. Liberty Mutual attributes this outcome to Thelemaque's inability to "articulate a factual basis to support any viable defense," as well as its belief that "Defendant does not have a good faith defense to the claims asserted herein." Doc. No. 6 at 1.

On July 27, 2011, Liberty Mutual filed a Motion for Summary Judgment. Def.'s Mot. Sum. J., Doc. No. 8. Therein, Liberty Mutual contends that the Agreement obligates Thelemaque to indemnify it for payments that Liberty made under the Conservator Bond and that Thelemaque has failed to fulfill this obligation. Thelemaque responded to Liberty Mutual's Motion for Summary Judgment on August 16, 2011. Def.'s Opp'n Pl.'s Mot. Sum. J., Doc. No. 9-1. Thelemaque concedes the truth of most of Liberty Mutual's factual allegations. *Id.* at 1–2. Nevertheless, Thelemaque vaguely asserts that she was "misled into believing that she received a bond in the stated amount of the initial order when she actually received a bond in a much higher amount." *Id.* at 6. Thelemaque adds that "[t]he difference between the $539,000.00 bond

received by the plaintiff and the $39,000.00 requested by the plaintiff show[s] as clear disconnect as to the intentions of the parties." *Id.*

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot

support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III. LEGAL ANALYSIS

### A. Choice of Law

"'A federal court sitting in diversity must apply the choice-of-law rules from the forum state.'" *Bank of America, N.A. v. Jill P. Mitchell Living Trust U/A DTD 06.07.1999*, Civil Action No. 10-CV-00857 AW, 2011 WL 5386379, at *5 (D. Md. Nov. 3, 2011) (quoting *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999)). "In deciding questions of interpretation and validity of contract provisions, Maryland courts ordinarily should apply the law of the jurisdiction where the contract was made." *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992).

In this case, the Indemnity Agreement indicates that Thelemaque executed it in Maryland. *See* Doc. No. 8-4 at 2 (listing a Maryland address for Thelemaque and containing her signature). Liberty Mutual agrees with this assessment of the evidence, *see* Def.'s Reply 5 n.2, Doc. No. 10, and Thelemaque has adduced no facts indicating otherwise. Accordingly, the Court applies Maryland law to the dispute.

### B. Analysis

"A contract of suretyship is a tripartite agreement among a principal obligor, his obligee, and a surety." *Gen. Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1309 (Md. 1985). "This contract is a direct and original undertaking under which the surety is primarily or jointly liable with the principal obligor." *Id.* (citing *Gen. Builders Supply Co. v. MacArthur*, 179 A.2d 868, 871–72 (1962)). Therefore, the surety "is responsible at once if the principal obligor fails to perform." *Id.* Nevertheless, "[u]ltimate liability rests upon the principal obligor rather than the surety." *Id.* (citing *Dixon v. Spencer*, 59 Md. 246, 247–48 (1883)).

The Court of Appeals of Maryland has "long adhered to the objective theory of contract interpretation." *Myers v. Kayhoe*, 892 A.2d 520, 526 (Md. 2006) (citing *Traylor v. Grafton*, 332 A.2d 651, 675 (1975)). "'A court construing an agreement under [the objective theory] must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Id.* (quoting *Dennis v. Fire & Police Emps. Ret. Sys.*, 890 A.2d 737, 747 (2006)). "[W]hen the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." *Id.* (quoting *Dennis*, 890 A.2d at 747). In other words, "[a] court will presume that the parties meant what they stated in an unambiguous contract, without regard to what the parties to the contract personally thought it meant or intended it to mean." *Maslow v. Vanguri*, 896 A.2d 408, 420 (Md. Ct. Spec. App. 2006) (citations omitted).

Although contracts procured through fraud are voidable, it is well-settled that proof of such fraud must be clear and convincing. *Compare Julian v. Buonassissi*, 997 A.2d 104, 119 (Md. 2010) (citing cases), *with Holt v. Quaker State Oil Refining Co.*, 67 F.2d 170, 171 (4th Cir. 1933). "For a [party] to have a right to rely on an alleged misrepresentation, the [party] must reasonably believe in the 'full truth' of the misrepresentation." *Jill P. Mitchell*, 2011 WL 5386379, at *24 (quoting *James v. Goldberg*, 261 A.2d 753, 758 (Md. 1970)). "A [party] cannot reasonably believe in the full truth of an alleged misrepresentation that directly contradicts the terms of a contract to which the person is a signatory." *Id.* at *25 (citing *Goldberg*, 261 A.2d at 758).

In this case, the unambiguous terms of the Indemnity Agreement obligate Thelemaque to reimburse Liberty Mutual for the money it paid under the suretyship. It is uncontroverted that the Parties jointly and severally bound themselves to the Bond of Conservator. It is also

uncontroverted that, owing to Thelemaque's squandering of her aunt's Estate's assets, the Superior Court entered judgment against Thelemaque and Liberty Mutual, jointly and severally, in the amount of $192,433.87, plus pre- and post-judgment interest.

Consistent with the general rule that "ultimate liability rests on the principal obligor," the Parties entered into an Indemnity Agreement in conjunction with the Bond. The Indemnity Agreement unambiguously states that Thelemaque agrees

> to exonerate and indemnify [Liberty Mutual] from and against all claims, losses, liability, damages of any type . . . , costs, fees, expenses, suits, orders, judgments, or adjudications whatsoever, which [Liberty Mutual] may incur in any manner related to the extension of surety credit, including the enforcement of the agreements contained herein . . . .

Doc. No. 8-4 at 2. The Agreement further provides that Liberty has the right to pay such losses and that such payment constitutes "prima facie evidence of the fact and extent of [Thelemaque's] liability." *Id.*

This language encompasses the breach of contract claim in question. At a minimum, Liberty Mutual has incurred a "loss" that relates to its extension of surety credit because it has, pursuant to its obligations under the Bond, satisfied the Superior Court's judgment in an amount of $197,922.08. Even though Thelemaque may subjectively believe otherwise, an objective person could only conclude that this language covers Liberty Mutual's satisfaction of the judgment. Liberty Mutual's claim for attorney's fees also fits snugly within the confines of the language that Thelemaque agrees to indemnify Liberty "from and against all . . . costs, fees, [and expenses] . . . related to the extension of surety credit." A reasonable fact-finder could only conclude that Liberty would not have incurred the attorney's fees and costs it has incurred in connection with this action had it not extended Thelemaque the surety credit.

Thelemaque's sole counterargument goes nowhere. Thelemaque suggests that Liberty Mutual fraudulently led her to believe that the Bond was for $39,000.00 when it turned out to be for $539,000.00. The Agreement, however, explicitly lists the "Bond Amount" as "$539,000.00." Doc. No. 8-4 at 1. This term matches the "$539,000.00" that the associated Bond of Conservator states. Doc. No. 8-3 at 1. Furthermore, Thelemaque concedes that she "actually received a bond in [the] much higher amount." Def.'s Opp'n 6, Doc. No. 9-1. Therefore, Thelemaque's amorphous counterargument clashes with the plain language of the Agreement. Accordingly, assuming *arguendo* Liberty Mutual made a misrepresentation, Thelemaque's reliance on it would be unreasonable as a matter of law.

Another salient flaw in Thelemaque's sole counterargument is that she has failed to adduce any evidence to support her self-serving assertions. Curiously, Thelemaque uses the passive voice when describing the alleged misrepresentation. *Id.* at 6 (emphasis added) ("The plaintiff **was misled** into believing that she received a bond [in the lower amount]."). This conclusory assertion leaves the reader to ponder who made this vague representation. At any rate, conclusory statements with no evidentiary basis cannot defeat a motion for summary judgment. *See supra* Part II.

In sum, Liberty Mutual satisfied its obligations as surety under the Bond of Conservator, and the related Indemnity Agreement expressly obligates Thelemaque to indemnify Liberty for losses incurred in connection with Liberty's suretyship. No reasonable fact-trier could conclude otherwise. Accordingly, the Court grants summary judgment in favor of Liberty Mutual.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Liberty Mutual's Motion for Summary Judgment. A separate Order follows.

| February 15, 2012 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |